162    3
176   500

## Rishel, Admr. of Greegor, *v.* Crouse, Appellant.

*Opening of judgment—Discretion—Review—Evidence.*

On an application to open a judgment entered by confession, defendant claimed that the note had been given to his wife to hand to plaintiff, her mother, after his death, so that the latter would have the amount of the note out of his estate as a gift on which to live. He also claimed that the note had never been delivered to plaintiff, that it was without consideration, and that he did not owe anything to plaintiff. Plaintiff filed a sworn answer denying all the averments of the petition. There was evi-

dence to the effect that defendant had received sums of money from plaintiff in excess of the amount of the note, and that plaintiff had lived in defendant's family for several years without paying board.  There was no evidence that the note had not been delivered to plaintiff, nor that she had obtained possession of it in a surreptitious manner.  The evidence as to the note being a gift consisted of declarations made by plaintiff, but the testimony was conflicting as to the terms of the gift.  There was also some uncertainty as to the declarations being applicable to the particular note in question.  *Held*, that the Supreme Court would not, under the circumstances, interfere with the discretion of the lower court in refusing to open the judgment.

Argued May 10, 1894.  Appeal, No. 75, Jan. T., 1894, by defendant, B. F. Crouse, from order of C. P. Snyder Co., Feb. T., 1893, No. 93, discharging rule to open judgment in favor of Chas. R. Rishel, admr. of E. R. Greegor, deceased. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Rule to open judgment.  Before McCLURE, P. J.

The facts appear from the following opinion :

" By his solemn obligation under seal, bearing date the 19th day of August, 1885, B. F. Crouse, the defendant, promised to pay one year after the date thereof, to the order of E. R. Greegor, his mother-in-law, $1,500 for value received, with warrant of attorney for confession of judgment, etc.  On this single bill judgment was entered Feb. 8, 1893, to the number and term above stated, and execution process issued for the collection of the debt.  The payment of the judgment is resisted, and it is sought to be opened for the following reasons, as set forth in defendant's petition : (1) That the note was signed and given to defendant's wife Lena to hand to the plaintiff after his death in case she should survive him, so she could get that much out of his estate as a gift on which to live.  (2) That he never delivered, nor authorized any one else to deliver, the note to the plaintiff, and don't know how plaintiff got possession unless she opened his safe ' where it might have been ' and took it without his knowledge or consent.  (3) That the note was without consideration.  (4) That defendant does not owe plaintiff but she is indebted to him.

" The defendant's wife, Lena, in whose possession the defendant says the note was placed, died January 2, 1893.

" The plaintiff's answer to the petition is responsive, and she denies under oath every allegation of the defendant, and avers that defendant personally handed her the note at or about the time it was written, and that at the time he was indebted to her in excess of the face thereof, and is still indebted to her, as no part of the debt or interest has been paid. This answer being responsive to the allegations of the petition is conclusive, unless overcome by evidence adequate for the purpose, viz.: the testimony of two witnesses or one witness and corroborating circumstances equivalent to another : Daniel's Chancery Practice, 843, and note.

The plaintiff having died since the filing of her answer the defendant of course was incompetent. The only testimony we have to prove that the bond was not what it purports to be, i. e., a solemn obligation for the payment of $1,500, in one year from the date thereof, and to convert it into a gift conditioned on the payee or obligee surviving the obligor, is that of John G. Curns, Mary Phillips, Lulu Hoover, and Henry N. Miller. Their testimony in the main is as to declarations made by Mrs. Greegor to them to the effect that the defendant was a good son-in-law, that he had drawn up a note in her favor and put it in Lena's hands; that if Frank should die first, the note would be for her benefit, etc. This testimony being a flat contradiction of the express terms of the written contract, if admissible at all, is only admissible on the ground that the plaintiff was making a fraudulent use of the instrument in violation of a promise or agreement made at the time the instrument was signed, and without which it would not have been executed : Phillips v. Meilly, 106 Pa. 543. Conceding the testimony of these witnesses competent for the purpose, it is at best unsatisfactory.

" Curns says Mrs. Greegor told him in September, 1892, that if Frank should die first it would be for her benefit. According to the witnesses she made about the same declaration to Lulu Hoover in 1885, and to Henry N. Miller in May, 1892, while Mary Phillips says she told her that ' he (Crouse) gave Lena a note for $1,500 to be given to me in case Frank and Lena would die before I did.' Thus, according to what Mrs. Greegor told Mr. Curns, Lulu Hoover and Mr. Miller, she was to have the money on the death of Frank, and according to

Mary Phillips both Frank and Lena would have to die before Mrs. Greegor would be entitled to the $1,500 gift.

"Again the note in dispute was in the possession of Mrs. Greegor in Washington in November, 1891, and in her possession in Selin's Grove in 1889 and 1890, before the conversations with Curns, Miller and Mary Phillips. If there was a note in Lena's possession or in the safe when these conversations were had, which was to be paid to Mrs. Greegor after Mr. Crouse's death, it was not the note in dispute. The testimony of these witnesses is all the evidence we have in the case that the bond in dispute was other than it purports to be on its face. Conceding Mrs. Greegor to have made these admissions to the witnesses, and that she had in mind the note in dispute, we do not consider them, unsupported by other testimony, sufficient to overthrow her answer under oath denying the allegations of the petition, coupled with her undisputed possession of the instrument. It is not enough to allege fraud; the evidence of it should be clear, precise and indubitable.

"2. The defendant avers in his petition that he never delivered the note or authorized his wife Lena, or any other person to deliver it to E. R. Greegor, and that he does not know how the plaintiff got possession except by opening his safe 'where it might have been,' and taking it out without his knowledge or consent. This is denied by the answer, and the plaintiff avers that defendant delivered the note personally about the time it was written. Here again the answer is conclusive unless overcome by evidence competent for the purpose. The possession of the note by the plaintiff is prima facie evidence of its actual delivery, and the burden of showing to the contrary is on the defendant. There is absolutely no evidence whatever that the note was not delivered as set forth in the answer. The testimony of Maria Singer, Wm. L. Renner and J. Norton Crouse, giving it full credit, goes no further than to prove that Mrs. Wm. H. Greegor, Mrs. E. R. Greegor's daughter-in-law, was in a position, and had the opportunity, about the time, or a little after the funeral of Mrs. Crouse in January, 1893, to take the note from Mr. Crouse's safe if it had been there. There is no evidence that the note was in the safe at the time. Mr. Crouse does not so state in his petition, and it is not proven by any of the witnesses. On the contrary, the

undisputed testimony of Mary F. Bronson shows that the note was in the possession of Mrs. E. R. Greegor as early as 1889. Again when Sheriff Bolender called with the execution on the 11th of February, 1893, Mr. Crouse, as the sheriff testifies, 'did not deny that he gave the note, but he said that he did not owe her anything, that he kept her so long that he thought the note was fully paid, if anything she owed him, that she was with him so many years. . . . He never said anything about the note having been taken out of the safe.' Cross-ex.: 'He said he had given her the note but that he thought it was fully paid, that he kept her so long and took good care of her.' These declarations to the sheriff are utterly at variance with the defence now set up to this bond. Mr. Crouse then admitted not only execution and delivery in so many words, but pleaded payment, which is an implied admission that the note had been lawfully in the possession of the plaintiff.

" 3. It is further contended by defendant that the bond is without consideration. The seal however imports consideration, and a bond, even though voluntary, is good against the party himself, his heirs, legatees, etc.: Candor & Henderson's Appeal, 27 Pa. 119 ; Burkholder v. Plank, 69 Pa. 225. Were Mr. Crouse in a position to question the want of consideration, the receipt of a draft for $1,192.80 on the very day this note was given, payable to Mrs. E. R. Greegor's order, by her indorsed and deposited by Mr. Crouse in bank to his credit, is a circumstance which would require more explanation than this record discloses.

" 4. Whether the plaintiff on settlement of all accounts owes the defendant or vice versa cannot be determined in this proceeding. It is not proven that the plaintiff agreed to allow her board bill, whatever it may have been, to be credited on this judgment note. Without such an agreement, testimony as to the value of her board, lodging and attendance was irrelevant. ' The mere fact that a person has a debt against his judgment creditor, gives no right against the will of the one holding the judgment to apply the debt as a payment thereon. In actions to which the defalcation act applies, the defendant may, under the plea of payment, give in evidence any claim founded on contract, which he has against the plaintiff, although it has no connection with the claim on which the action is brought, and,

in case it exceeds, the plaintiff recovers a judgment for the difference.   This rule does not apply on a judgment being opened after having been regularly entered.   The judgment does not, thereby, become subject to set-off generally.   In some manner either at law or in equity the subject-matter of defence must have attached to the judgment or the consideration on which it rests : Harper et al. v. Kean, 11 S. & R. 280.   No court would open a judgment merely on proof that the defendant had an account against the plaintiff equal to the amount of the judgment.   The plaintiff may also have an account against the defendant, but whether he has or not, that is not the proper manner of adjudicating the account.'   Mr. Justice MERCUR in Beatty v. Bordwell, 91 Pa. 441.   If Mr. Crouse has an account for boarding, etc., against Mrs. Greegor, he can have that adjusted in a proper proceeding instituted for that purpose.

" August 19, 1893, for the reasons above stated, the rule is discharged at the costs of the defendant."

Applications for rehearings were refused.

*Errors assigned* were above orders, quoting them.

*Charles Hower*, for appellant.—Where the court is in doubt, the case should be sent to a jury : Kloper v. Ekis, 155 Pa. 41.

*Charles P. Ulrich* and *A. W. Potter*, for appellee, not heard, cited, on question of reversing action of court : Act of May 20, 1891, P. L. 101; Jenkintown Bank's Ap., 124 Pa. 344; Kebler v. Plow Co., 146 Pa. 491; Earley's Ap., 90 Pa. 321; Wernet's Ap., 91 Pa. 319; Kneedler's Ap., 92 Pa. 428; Wise's Ap., 99 Pa. 193; Babcock v. Day, 104 Pa. 7; Applebee's Ap., 126 Pa. 387; Sylvius v. Kosek, 117 Pa. 76.

PER CURIAM, May 21, 1894:

The learned judge of the court below filed no less than three opinions upon the several applications of the defendant to have this judgment opened and to have rehearings.   We have examined patiently the testimony given on both sides and are constrained to say, not only that we do not think it a proper case in which to interfere with the discretion of the court below, but also that we fully approve of all that was done by the

learned court. The testimony given in the attempt to impeach the judgment was entirely too unsubstantial and infirm in character to warrant any interference with it, and the testimony given in its support convinces us that there was ample money consideration for it.

The order of the court below is affirmed and the appeal dismissed at the cost of the appellant.